### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS

Yvette James,

        Plaintiff,

v.

Cook County, et al.,

        Defendants.

No. 22 CV 03232

Honorable Nancy L. Maldonado

## <u>MEMORANDUM OPINION AND ORDER</u>

Pro se plaintiff Yvette James brings this employment discrimination action against Cook County, the Cook County Sheriff's Office ("CCSO"), and her union, the National Nurses Organizing Committee ("NNOC"). James alleges claims for unlawful race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1981. Pending before the Court are two motions to dismiss, one filed by the CCSO (Dkt. 19), and one by the NNOC. (Dkt. 33.)[1] For the reasons stated in this Order, the CCSO's motion to dismiss is denied, and the NNOC's motion to dismiss is granted in part and denied in part. James's claims against the NNOC under Title VII are dismissed without prejudice based on James's failure to exhaust those claims with the EEOC. To the extent James is attempting to bring claims against the NNOC based on a breach of its duty of fair representation, those claims are dismissed without prejudice for lack of subject matter jurisdiction. James has, however, stated a claim for race discrimination against the NNOC under § 1981. The NNOC and CCSO shall therefore answer James's complaint within 21 days of this Order.

---

[1] In citations to the docket, page numbers are taken from the CM/ECF headers.

### Background

James initiated this federal action on June 21, 2022, and her Complaint was docketed on July 12, 2022 when she paid the filing fee. (Dkts. 1, 9.) In the form "Complaint of Employment Discrimination," James alleges a claim for race discrimination under Title VII and § 1981. The Court takes the following factual background from the allegations in the Complaint (Dkt. 9) and assumes the allegations to be true for the purposes of the instant motion. *See Lewert v. P.F. Chang's China Bistro, Inc*., 819 F.3d 963, 966 (7th Cir. 2016). The Court has also considered James's additional allegations included in her oppositions to the motions to dismiss, (Dkts. 37, 38), as long as the allegations are consistent with her claims in her Complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("We have held that facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent [with] the allegations in the complaint.) (internal quotations omitted).

James, who is African-American, is employed with Cermak Health Services as a registered nurse. (Dkt. 9 at 11; Dkt. 37 at 2.) James alleges that on November 2, 2021, she was sexually assaulted by a detainee at the Cook County Jail while responding to a medical emergency involving the detainee (Dkt. 9 at 4–5, 11.) James alleges that the detainee, who is white, grabbed her behind in the presence of several other staff members, including Cook County Department of Corrections ("DOC") Officers. (*Id.*)

James filed an incident report and requested that the DOC press charges against the detainee. (*Id.* at 11.) James spoke to a DOC investigator and provided an account of the incident, as well as a list of witnesses. (*Id.*) James also relayed to the investigator a statement from a white DOC sergeant who had witnessed the incident, who stated that the detainee "was just detoxing."

2

(*Id.*) The DOC investigator later contacted her and told her that after speaking to the witnesses, she had no case. According to James, however, the investigator had not contacted a nurse whom she had identified as a witness. (*Id.*) Over the course of December 2021 into January 2022, James continued to follow up with the DOC investigator via phone and email, requesting that he revisit the witness list and interview the nurse that James had identified. (*Id.*) After several inquiries, the investigator finally responded to James on January 26, 2021, stating that the investigation was ongoing. (*Id.*)

On February 2, 2022, James arrived for work at the Cook County Jail, but was refused entry and escorted off the compound by a DOC officer. (Dkt. 37 at 3.) James was provided a "Stop Order," which indicated her access to the jail was being revoked based on alleged "verbal threats" she had made to the DOC investigator. (*Id.* at 3, 15.) James denies that she made any such threats. (*Id.*)

Following her receipt of the "Stop Order," James's manager at Cermak Health Services informed her that she was being placed on administrative leave pending an investigation into whether she violated any personnel rules based on the alleged threats to the investigator. (*Id.* at 3, 10–14.) James was also informed she would have an investigatory hearing into the charge against her on February 9, 2022. (*Id.*)

After receiving notice of being placed on administrative leave, James alleges that she attempted to contact several representatives of her union, the NNOC, to discuss her situation and the pending hearing. (Dkt. 38 at 2.) James claims she made several attempts to get in touch with her NNOC representatives that went unanswered. (*Id.*) She further alleges that, while two NNOC representatives were present during the investigatory hearings held on February 9 and February 10, 2022, neither representative spoke on her behalf nor requested any documentation from her

employer. (*Id.*) James was therefore required to defend herself at the hearing. (*Id.*)

James remained on administrative leave essentially "in limbo" for roughly three months after her hearings in February 2022. (Dkt. 37 at 3). During that time, James repeatedly followed up with the hearing officer and her NNOC representatives about whether she would be reinstated or receive a further hearing, but received conflicting information about her case. (Dkt. 38 at 1–2.) For example, James was told at one point that she was being terminated and did not qualify for another position in the Cook County health system, but at another point was asked to submit a resume for a different position. (Dkt. 38 at 1–2.) Eventually, on May 31, 2022, James was reinstated and returned to work, though she maintains that she never received a formal decision from her February 2022 hearing, and that while she received backpay, the amount she received was incorrect. (*Id.*)

In her Complaint, James originally named as defendants her employer, Cermak Health Services, the Cook County DOC, and the NNOC. The Court later substituted Cook County as the proper defendant in place of Cermak Heath Services, as Cermak is a division of Cook County and is not itself a suable entity. (Dkt. 27). The Court also substituted the CCSO as the proper defendant in place of the Cook County DOC, as the DOC is, like Cermak, a non-suable entity. (*Id.*)

Cook County has answered the complaint, (Dkt. 35), and both the CCSO and NNOC have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that James's complaint fails to state a claim for relief. (Dkts. 19, 33.)[2]

---

[2] Initially, the CCSO moved to dismiss pursuant to Rule 12(b)(1) on the grounds that the Court lacked jurisdiction because James named the DOC, a non-suable entity, as defendant. But the CCSO acknowledged that the jurisdictional deficiency in the complaint could be cured by dismissing the DOC and substituting the CCSO as the proper defendant in its place, which the Court did. (Dkt. 19 at 3l; Dkt. 27). Therefore, the only portion of the CCSO's motion to dismiss that remains before the Court is its Rule 12(b)(6) argument that the Complaint fails to state a claim for relief.

## Legal Standards

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("[A] plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.") (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

### A. The CCSO's Motion to Dismiss

James brings claims for race discrimination and retaliation against the CCSO under Title VII, and under § 1981, via 42. U.S.C § 1983.[3] Title VII prohibits employers from discriminating

---

[3] The form complaint that James submitted indicates her claims are brought under Title VII and § 1981, but claims for violations of § 1981 can only be brought against state actors like the CCSO through 42 U.S.C § 1983. *See Campbell v. Forest Preserve Dist. of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir.2014) (noting that "§ 1981 itself provides a remedy for violations committed by private actors, but an injured party must resort to § 1983 to obtain relief for violations committed by state actors."). The CCSO, however, appears to assume for the purposes of its motion to dismiss that James has properly pled her § 1981 claim through § 1983 (Dkt. 19 at 4.) Even if it had not, the Court would not dismiss James's claim on such a technicality, as no plaintiff, whether pro se or not, is required to plead legal theories or cite to specific statutes in their complaint. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) The Court therefore assumes that James's § 1981 claim against the CCSO is properly plead under § 1983.

against employees on the basis of race. 42 U.S.C. §2000e-2(a). Section 1981 prohibits racial discrimination in the making and enforcing of contracts, and its protections include the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions" of such contractual relationships. 42 U.S.C. § 1981(a), (b). As a general matter, "the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983." *See Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020) (internal citation omitted). In order to state a claim for race discrimination under these statutes, a plaintiff need only plausibly allege that her employer took an adverse employment action against her because of her race. *See Shirley v. Staffing Network Holdings*, *LLC*, No. 16 C 6279, 2016 WL 6599951, at *3 (N.D. Ill. Nov. 8, 2016) (citations omitted); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims.").

The CCSO's primary argument in support of dismissal is that James cannot state a claim against it under Title VII or § 1981 because the CCSO is not her employer. (Dkt. 19 at 4-5.) Rather, James alleges she works for Cermak Health Services, a division of Cook County, which is a separate and distinct entity from the CCSO. (Dkt. 40 at 3). The CCSO argues that James's only references to the CCSO in her pleadings relate to the actions of the DOC investigator, who she does not allege had any supervisory authority over her or control over the terms and conditions of her employment. (*Id.*) The CCSO thus argues that James's claims against it must be dismissed because she has not established any employment relationship with the CCSO, a prerequisite for any Title VII or § 1981 discrimination claim. (*Id.*)

The CCSO is correct that "[s]ettled precedent holds that an Illinois county is separate from the sheriff's office in that county." *Mitter v. Cnty. of DuPage*, No. 13 C 841, 2013 WL 5951810,

at *3 (N.D. Ill. Nov. 7, 2013) (citing *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989) ("The Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County. The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners."). Further, the CCSO is also correct that, in general, "[t]o maintain a Title VII action against a defendant, a plaintiff must prove the existence of an employment relationship." *Brown v. Cook Cnty.*, No. 17 C 8085, 2018 WL 3122174, at *6 (N.D. Ill. June 26, 2018) (citing *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996)).

James does not address the CCSO's argument that she is not its employee, or the distinction between Cook County and the CCSO in her opposition. Instead, James largely provides further factual elaboration on the basis of her claims. As the CCSO points out in its reply, the failure to respond to an argument generally constitutes a waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). The Court notes, however, that the CCSO bears the burden of persuasion on its motion to dismiss, and the Court is not required to dismiss a plaintiff's claim on the basis of waiver if the moving defendant fails to persuade the Court that the plaintiff has not stated any plausible claim for relief. *See Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008); *Gallardo v. Chi. Transit Auth.*, No. 15 CV 7458, 2016 WL 7049055, at *3 (N.D. Ill. Dec. 5, 2016). As explained further below, based on the allegations in James's complaint and her opposition memorandum, the Court finds she has alleged sufficient facts to state a plausible claim for relief against the CCSO.

While the CCSO suggests that the fact that it does not employ James necessarily defeats her claim, "Title VII allows a plaintiff to bring a claim against a defendant who is not her direct employer under certain circumstances" *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146, 2022

WL 1404833, at *7 (N.D. Ill. May 4, 2022) (citing *Love v. JP Cullen & Sons, Inc*., 779 F.3d 697, 700–01 (7th Cir. 2015) ("a plaintiff may have multiple employers for the purpose of Title VII liability.)) In the Seventh Circuit, courts determine whether a non-direct employer can be held liable as an employee's "de facto" or "indirect" employer by applying a five-factor test first set out in *Knight v. United Farm Bureau Mut. Ins. Co*., 950 F.2d 377, 380 (7th Cir.1991). *See also Love*, 779 F.3d at 702 (explaining that courts should apply the *Knight* factors to determine how much control a potential employer-defendant exerted over the plaintiff-employee, and what the economic realities of their relationship were, to see if that defendant can be liable to the plaintiff under Title VII).

The Court need not conduct an extensive analysis of the *Knight* factors at this early stage of the proceedings. The question of whether the CCSO can be held liable under Title VII as an indirect employer under the *Knight* factors is highly dependent on the particular facts and circumstances of the case, including the CCSO's relationship with James, the nature of her work, and the extent to which the CCSO exerts any control over James's employment. Resolving those factual issues is more proper at the summary judgment stage with a fully developed factual record. *See, e.g., Brown v. Cook Cnty*., No. 17 C 8085, 2018 WL 3122174, at *7 (N.D. Ill. June 26, 2018) (noting that questions over whether a defendant exercised sufficient control over a employee to establish an employment relationship are typically resolved at summary judgment) (collecting cases); *Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542, at *7 (N.D. Ill. Mar. 17, 2022) (declining to dismiss defendant that was not plaintiff's direct employer, because "[a] more fully developed factual record is necessary to determine the extent (or lack thereof) of an employment relationship between these parties under the unique relationships alleged in the Complaint."); *see also Fields v. Cnty. of Cook*, No. 19-CV-02680, 2020 WL 5296926, at *6 (N.D. Ill. Sept. 4, 2020)

("Factual issues about the nature of the employment relationship cannot be resolved at the pleading stage.").

At this initial pleading stage, the Court finds that James has pled sufficient facts to at least plausibly state a claim that the CCSO can be liable under Title VII and § 1981 as an indirect employer. Specifically, James alleges that the DOC was responsible for investigating her claim of sexual harassment by a detainee while she was on the job at Cook County Jail. Further, it was the DOC investigator's claim that James made threats that led her to be barred from the Cook County Jail and placed on administrative leave by her employer for three months. In other words, James alleges that the CCSO controlled the investigation into her claim of sexual harassment, controlled her access to her worksite, and was essentially responsible for her placement on administrative leave based on the claims of a DOC investigator. Construing these allegations liberally, as the Court must do at this stage, the Court can draw a reasonable inference that the CCSO had sufficient control over James's employment such that it can be liable as an indirect employer under Title VII. Whether or not the evidence produced in the case will ultimately be sufficient to establish an indirect employment relationship under the *Knight* factors mentioned above is a question for another day. *See Brown*, 2018 WL 3122174, at *7 (declining to dismiss Cook County Sheriff as defendant in sexual harassment case brought by public defenders, because although the Sheriff did not directly employ the plaintiffs, their allegations that he had responsibility and control over the jails and courthouses where the plaintiffs met their detainee-clients were sufficient to survive a motion to dismiss). At this stage, the allegations are sufficient to proceed against the CCSO under an indirect-employer theory.

The CCSO's other arguments in favor of dismissal are unavailing. The CCSO initially argued that James failed to plead her race, and thus could not state a claim for race discrimination.

(Dkt. 17 at 5.) But James has remedied that issue in her response by clarifying that she is African-American. (Dkt. 37 at 2.) The CCSO further claims that James has not alleged an adverse employment action, (Dkt. 17 at 5), but James's pleadings indicate she is claiming she was placed on a discriminatory administrative leave for which she is still owed back pay. (Dkt. 9 at 5–6.) Finally, to the extent the CCSO argues that James has not otherwise pled sufficient details to state a claim for discrimination, the Court reiterates that at this initial stage, James need only plausibly allege that she suffered an adverse employment action because of her race. *See Shirley*, 2016 WL 6599951, at *3; *Carlson*, 758 F.3d at 827. While James's complaint is not as explicit as it might have been had it been drafted by an attorney, she states that she is African American, that the detainee who allegedly assaulted her was white, and that a white DOC officer made a seemingly dismissive comment about her claim of harassment. Additionally, James states in her opposition that another situation involving an African-American detainee exposing himself to her was handled differently. Construing these allegations in James's favor, the Court can draw a plausible inference that the discrimination James alleges was because of her race. These allegations are enough to survive a motion to dismiss.

In sum, for the foregoing reasons, the CCSO's motion to dismiss is denied. The Court advises James that it is not making a determination, one way or another, as to the *truth* of her allegations, or whether she will ultimately be able to prove her case against any defendant. James will be required to come forward with evidence establishing that the CCSO is liable to her for discrimination. The only determination the Court makes at this stage is that her allegations, *if true*, state a plausible claim, and therefore the case can proceed.

**B. The NNOC's Motion to Dismiss.**

The NNOC, the nursing union of which James is a member, raises several grounds for dismissal in its motion. To start, the NNOC argues that James has not administratively exhausted her Title VII claim because she failed to name the NNOC in her charge with the EEOC, and therefore this claim must be dismissed. (Dkt. 33 at 5.) The Court agrees. A plaintiff may only bring Title VII claims in federal court after first filing a charge with the EEOC, and then receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1)(A); *Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, 175 F. Supp. 3d 1026, 1034 (N.D. Ill. 2016). James's EEOC charge does not reference or name the NNOC, and there is no indication that the NNOC had notice of the EEOC charge or that James intended to bring a Title VII claim against it. James has thus failed to administratively exhaust her Title VII claim against the NNOC, and the claim must therefore be dismissed without prejudice.

Second, the NNOC argues that, to the extent that James may be attempting to bring a claim for breach of the duty to provide fair representation, such a claim must be dismissed because it is within the exclusive jurisdiction of the Illinois Labor Relations Board ("ILRB"). (Dkt. 33 at 6–7.) It does not appear to the Court that James intends to bring a state-law claim against the NNOC for a breach of the duty of fair representation. Rather, her allegations sound in claims of race discrimination and retaliation under federal law. But, to the extent that James is attempting to bring a claim that the NNOC breached its duty of fair representation or engaged in unfair labor practices, this Court does not have jurisdiction to hear such claims. The ILRB "has exclusive jurisdiction to hear unfair labor practice grievances of Illinois state employees." *Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999). Indeed, as the NNOC notes, it appears James already filed such a claim before the ILRB, as she has attached an ILRB filing and decision to her complaint. (Dkt. 9 at 23–29.) If

James wishes to appeal the ILRB's determination, that appeal must be brought in Illinois state court. 5 ILCS 315/11(e). In short, to the extent James attempts to assert any state law claim for breach of the duty of fair representation here, those claims are dismissed without prejudice for lack of subject matter jurisdiction *See Dunkley v. Loc. 2600 AFSCME*, No. 3:18-CV-2189-NJR, 2020 WL 1083159, at *4 (S.D. Ill. Mar. 6, 2020) ("the Court must dismiss any claim to the extent that the claims allege a breach of the duty of fair representation on the part of [the union] for lack of subject matter jurisdiction.").

Finally, the NNOC argues that James's complaint contains no allegations targeted at or specifically describing conduct by the NNOC, and therefore she has failed to state a claim for discrimination against the union under § 1981. (Dkt. 33 at 4–5). The Court disagrees, however, and finds that James has alleged sufficient facts stating a claim for discrimination against the NNOC under § 1981. It is true, as the NNOC notes in its motion, that the face of James's complaint does not reference any specific conduct or allegations against the NNOC. James's opposition to the NNOC's motion, however, does provide further elaboration on her discrimination claims against the Union. In particular, James alleges that she attempted to contact NNOC representatives in advance of her February 2022 hearing regarding the DOC investigator's claims against her that she made threats, but that the NNOC representatives ignored her. (Dkt. 38 at 2.) James further contends the NNOC representatives did not speak on her behalf at the hearing, and that during the three months she was on administrative leave after the hearing, the union gave her conflicting information. (*Id.*) James states that it was her belief that the NNOC's intent was to intimidate or harass her to resign, and that the union generally did not advocate for her. (*Id.*) James also suggests the NNOC was not following its own rules for scheduling follow up proceedings. (*Id.*) James concludes by alleging that the "the animus the union has shown towards me has been blatantly

retaliatory and racially discriminatory in nature. The NNOC exhibited deliberate indifference to my rights by failing to act on information indicating the unconstitutional acts and violations of my Collective Bargaining Agreement were occurring." (*Id.* at 3.)[4]

Taken all together, the Court finds these additional allegations are sufficient to state a claim for race discrimination against the NNOC under § 1981. Similar to a Title VII claim, in order to state a claim for race discrimination against the NNOC under § 1981, James need only plausibly allege that the NNOC discriminated against her on the basis of her race in performing its union functions, such as by refusing to [process a grievance because of her race or her complaints about race. *See, e.g., Flowers v. City of Chicago*, No. 18 C 7003, 2019 WL 1932587, at *2, 7 (N.D. Ill. May 1, 2019) (noting that the plaintiff's § 1981 claim must meet the standards for a Title VII claim, meaning that the plaintiff "need only allege that defendants 'took job-related action against [the plaintiff] which was motivated by intentional discrimination.'") (citations omitted); *Chapman v. AFSCME Council 31*, Loc. 3477, No. 17 C 8125, 2019 WL 214478, at *6 (N.D. Ill. Jan. 16, 2019) ("The pleading requirements of a racial discrimination claim under Title VII and § 1981 are essentially the same. Plaintiffs must show that the Union would have processed their grievances had they been white."). In viewing James's allegations liberally, the Court draws the reasonable inference that she is contending the NNOC failed to advocate for her and follow its own union rules with respect to her employer's investigation into her alleged threats to the DOC investigator,

---

[4] The Court notes that, while it would have been more appropriate for James to include this additional factual elaboration in her original complaint, "[a] plaintiff may supplement existing claims with additional factual allegations in the response to the motion to dismiss as long as the new facts are consistent with the original claims made in the complaint." *Adedeji v. Cobble*, No. 10 C 0892, 2013 WL 449592, at *2 (N.D. Ill. Feb. 5, 2013). James's complaint names the NNOC as a defendant and indicates that James was bringing a claim for race discrimination under Title VII and § 1981. James's narrative in her response brief is merely an elaboration of those claims, and the Court finds it can consider her additional allegations as consistent with her claims in the complaint. This is particularly appropriate in light of James's pro se status. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (reversing a district court's dismissal of several claims by a pro se plaintiff, noting that the district court should have considered the additional materials the plaintiff submitted with their response "[g] iven the district court's obligation to construe pro se pleadings liberally.").

and that the NNOC's failure to advocate for her and follow union rules was motivated by racial animus and/or retaliation. While James's assertions are somewhat vague, the Court finds that they are sufficient to state a claim. *See Flowers,* 2019 WL 1932587 at *2, 7 (declining to dismiss § 1981 claim against union defendant where the plaintiff merely alleged the union "failure[ed] to enforce the CBA and grieve [plaintiff's] claims," and that they did so because of his race).

The NNOC replies that James "has not explained how" her allegations support a race discrimination claim against it. But as noted above, it is the NNOC, not James, that bears the burden of persuasion on a motion to dismiss. *See Reyes*, 585 F. Supp. 2d at 1017. Rather than address the substance of James's additional elaboration, the NNOC merely claims in summary fashion that James's opposition makes it "abundantly clear that [she] has no claims of employment discrimination by NNOC," and that any claim she does have is in reality a state-law unfair labor practices claim that the court cannot hear. But the NNOC's conclusory assertions are unavailing. As discussed above, James's pleadings, read liberally, raise a plausible claim that the NNOC discriminated against her in the performance of its duties because of her race. Again, the Court stresses that whether or not James can ultimately succeed on such a claim is another question. James will have to come forward with evidence that the NNOC failed to perform its duties and did so with discriminatory intent. But at this initial pleading stage, her allegations are sufficient to state a claim. The NNOC's motion to dismiss is therefore denied with respect to James's claim under §1981.

### Conclusion

For the foregoing reasons, the CCSO's motion to dismiss is denied in full. The NNOC's motion to dismiss is granted in part with respect to James's claims under Title VII and any claims based on unfair labor practices or a breach of the duty of fair representation. The NNOC's motion

is denied with respect to James's claims under §1981 for race discrimination.

Entered: 10/26/2023

*Nancy L. Maldonado*

_____

Honorable Nancy L. Maldonado
U.S. District Judge